

**Florida Yacht Management**
2525 Marina Bay Dr. West - Fort Lauderdale - FL 33312
www.floridayachtmanagement.com - info@floridaym.com - (954) 900-9968

### YACHT MANAGEMENT AGREEMENT

THIS YACHT MANAGEMENT AGREEMENT (the "Agreement") is entered into this ____ day of _____, 20___ by and between the Owner, as defined below, and the Manager, as defined below.

<u>**PART I**</u>

| | |
|---|---|
| **1.** | **Date of Commencement of Services ("Commencement Date"):** 03/01/2018 |
| **2.** | **Registered Owner of the Yacht (the "Owner"):**<br>*Name:* Defiance Charters, LLC<br><br>*Address or Place of registered office:*<br>Delaware<br><br>*Jurisdiction of Incorporation:* |
| **3.** | **Manager:** Florida Yacht Management, LLC (a Florida limited liability company) |
| **4.** | **Vessel Information (the "Vessel"):**<br>*Name:* Polaris<br><br>*Year/Make/Model:* 2001 / Sunseeker / Yacht<br><br>*Classification Society:* Same<br><br>*Flag:* Is<br><br>*Commercial of Pleasure registration:* Pleasure<br><br>*Official Number:* Same<br><br>*Gross Tonnage:* N/a<br><br>*LOA:* 74'<br><br>*Beam:* 17.8<br><br>*Draft:* 9.5 |
| **5.** | **Monthly management fee ("Management Fee"):** $ __1,776__ __00__ per month<br><br>In addition to the Services specified below, the monthly Management Fee includes (check where applicable):<br>☐ __12__ number of hours of systems checks per month.<br>☐ Bottom cleaning to be conducted __1__ times per month.<br>☐ __8__ number of hours of interior cleaning to be conductedper month.<br>☐ Exterior wash to be conducted __4__ times per month.<br>☐ Other: _____<br>_____<br>_____ |



<table>
<tr><td>6.</td><td colspan="2"><strong>Management services to be provided (the "Services"), Yes or No as applicable:</strong></td></tr>
</table>

| 6. | **Management services to be provided (the "Services"), Yes or No as applicable:** | |
|----|------------------------------------------------------------------------------------|---|
| | a. Crew Support Services: | X |
| | b. Accounting Services: | X |
| | c. Insurance Arrangements: | X |
| | d. Administration: | X |
| | e. Technical Services: | XX |

| **7. Notices to Owner to be sent to:** | **8. Notices to Manager to be sent to:** |
|-----------------------------------------|-------------------------------------------|
| *Name:* Robert sweet | *Name*:  Mike Carlson |
| *Title:* Manager | *Title*:  Manager |
| *Address*:  4907 Fort Sumner drive  Bethesda md 20816 | *Address*:  2525 Marina Bay Drive West  Fort Lauderdale, FL 33312 |
| *Email:* Robert.sweet@gmail.com | *Email*:  mike@26northyachts.com |
| *Phone*: 202-329-0268 | *Phone*:  (954) 309-1255 |

**PART II**

1.    Appointment of Managers

With effect from the Commencement Date, and continuing unless and until terminated in accordance with this Agreement, the Owner hereby appoints the Manager and the Manager hereby agrees to act as the Manager of the Vessel in connection with the Services, as agents for and on behalf of the Owner.

2.    Management Services

a.    The Manager undertakes to use its best endeavours to provide the Services as agent for and on behalf of the Owner in accordance with sound yacht management practice. The Manager shall provide advice to the Owner from time to time concerning the efficient management of the Vessel, including the provision of services in relation to the flag and cruising area regulations, certification and practices.

b.    When allocating resources, the Manager shall in the performance of the Services be entitled to have due regard to its overall responsibilities in relation to all vessels as may from time to time be entrusted to its management.

c.    The Owner is responsible for making sufficient resources available to the Manager in order that the Manager may duly and punctually perform the Services herein.

d.    The Owner shall ensure that the Master of the Vessel adheres to the Manager's safety management system and administration guidelines implemented in connection with the Vessel pursuant to this Agreement.

e.    The Manager may sub-contract parts of the Services.

f.    The Manager shall provide full management services based on applicable laws, codes, regulations, flag state and classification society requirements, and as such services are selected in Part I, Section 6 (the "Services").  Additional services must be quoted and confirmed in writing by the Owner and Manager.

g.    The Services shall include where the context requires services in relation to tenders and recreational equipment that form part of the Vessel's standard equipment, being normally stored on board the Yacht.  The Manager shall not be responsible in any way for helicopters, airborne vehicles, submersibles, or other exotic equipment.

3.    Crew Employment *(this section only applicable if "Yes" selected in Part I, Section 6.a.)*

a.    Manager shall assist in filling crew vacancies and advise to need and suitability so as to assist the Owner in crew selection.

b.    It is expressly understood and confirmed that the Owner or another entity under the Owner's ownership and/or control shall be the employer for the purposes of crew employment. The Owner will be solely responsible for compliance with any applicable employment legislation and for the payment of any and all taxes and/or social security charges and/or pension arrangements and/or any mandatory dues that may be required by any authority in relation to crew or the employment of crew.

c.    Owner will be responsible for payment of any applicable introduction or placement fees either to the Manager or to any crew agencies, as agreed to by the Owner and Manager in writing.

d.    Owner shall ensure compliance with the Vessel's flag state laws, provided the Manager will provide consultation to the Owner and the Master in this regard.

4.    <u>Accounting</u> (*this section only applicable if "Yes" selected in Part I, Section 6.b.*)

a.    The Manager shall establish an accounting system based upon its established procedures and supply regular accounting reports to the Owner, at monthly intervals or such other intervals as may be mutually agreed from time to time.

b.    The Manager shall be entitled, if reasonably necessary in the event of an emergency, to authorise exceptional expenditure not provided for in the aforesaid budget of up to $5,000 (five thousand dollars) in respect of one or more extraordinary items without first having obtained the Owner's consent.

c.    The Manager shall each month request from the Owner, and the Owner shall pay, the funds required to manage and operate the Vessel for the ensuing month, including the payment of any extraordinary item(s) of expenditure as aforesaid. The Manager shall receive such Funds within ten (10) days after the receipt of such request.

d.    All budget funds and other monies collected by the Manager on behalf of the Owner under the terms of this Agreement shall be held in Manager's trust account.  The Owner specifically authorises the Manager to dispense such funds in accordance with this Clause 4. Owner warrants and will procure that all funds provided to the Manager or to the Yacht are made available in compliance with all applicable regulation and legislation in any applicable jurisdiction and hereby indemnify and hold harmless the Manager against all actions, proceedings, claims, demands or liabilities whatsoever or howsoever arising which may be brought against them or incurred or suffered by them arising out of or in connection with any matters hereunder, and against and in respect of all costs, loss, damages and expenses (including legal costs and expenses on a full indemnity basis) which the Manager may suffer or incur (either directly or indirectly) in connection with the matters stipulated in this Clause 12.  Further, the Owner agrees to promptly provide relevant documentation required to comply with relevant regulations in respect of handling of funds, including without limitation proof of origin of wealth and source of funds, identity and residence documents of the beneficial user and/or beneficial owner and/or ultimate provider of funds of the Vessel. Manager agrees to hold such information on a confidential basis and not to disclose the same to third parties unless such disclosure is required by a competent authority or bank, or, with the Owner's written consent, if it is necessary in connection with the performance of the Services hereunder.

e.    Owner will procure that any withdrawal of cash for personal use or otherwise for any purpose connected with the Vessel is accompanied by any relevant reasonably required documentation and that any such cash is handled by the Owner in accordance with any applicable laws and regulations.  Owner shall indemnify and hold harmless the Manager from any breach whatsoever of any such law or regulation in accordance with Clause 12.

5.    <u>Insurance Arrangements</u> (*this section only applicable if "Yes" selected in Part I, Section 6.c.*)

a.    The Manager shall obtain insurance quotations if requested by Owner in writing.

b.    The Manager shall assist with the general administration of the Owner's insurances, which shall include, where Manager has been made aware of the need for such action to be taken, informing the insurers or brokers of circumstances where insurance cover for the Yacht needs extending or that a change in circumstances exists.

c.    The Manager is not an insurance broker and is not authorized to undertake insurance advisory work.  The Owner should look to its insurance brokers for recommendations of insurers and advise on policy terms.

d.    The Owner shall be solely responsible for ensuring that all insurance warranties are complied with and nothing is done which may prejudice the Owner's insurances.  The Owner remains responsible for timely payment of insurance premiums as such become due.

6.    <u>Administration</u> (*this section only applicable if "Yes" selected in Part I, Section 6.d.*)

Where requested, the Manager shall provide the following administrative and logistical support to the Owner: (i) appointing agents and surveyors on behalf of the Owner; (ii) arranging of holding and dispatch of crew mail where requested; (iii) applying for cruising permits; (iv) booking pilots; (v) liaising with communication service providers and where necessary, in order to facilitate the provision of communication services to the Owner, to enter into contracts with communication services provides, on behalf of the Owner; (vi) liaising with the Yacht's flag state; (vii) assisting with customs procedures; and (viii) general assistance to the master and crew.

7.    <u>Technical</u> (*this section only applicable if "Yes" selected in Part I, Section 6.e.*)

a.    Manager shall supervise the Yacht's maintenance and upkeep by the crew and any contractors, which will include reviewing planned maintenance reports and assistance with troubleshooting reported technical problems.

b.    Upon request and in conjunction with the Master and engineers, the Manager shall assist in shipyard specifications for and supervise routine surveys, dry dockings, and repairs to the Yacht to the standards required by the Owner.  On site supervision and planning of extended shipyard periods is outside the scope of this Agreement unless agreed separately by Owner and Manager in writing.

c.    Upon request, the Manager shall arrange the supply of necessary stores, spare parts, and lubricating oil and shall arrange for the sampling and testing of bunkers and lubricants.

d.    The Manager shall appoint and liaise with surveyors and technical consultants as Manager may consider necessary.

e.    The Owner acknowledges that the proper technical management of the Yacht requires the Manager to be kept fully informed in a timely manner by the Owner and Master of significant issues affecting the safety, function, seaworthiness or compliance with all applicable laws, rules, and regulations, including but not limited to those of the Yacht's flag state and Port State Control, and that the Owner shall indemnify the Manager for the consequences of any breach of this Paragraph 7.

f.    The Manager shall not commence any technical, repair, or other work on the Vessel without a pre-approved written cost estimate signed by the Owner.

8.      Disclosure by Owner

        The Owner shall promptly notify the Manager in writing if it makes arrangements for the Vessel to be chartered or sold, and of any other significant relevant facts regarding any aspect of the Vessel and her ownership.

9.      Manager's Authority

        a.      The Owner hereby authorises the Manager to give such instructions, take such actions, enter into such contracts and engage such services, on the Owner's behalf and in its name, as the Manager may from time to time in its reasonable discretion consider to be necessary to carry out the Services including, without limitation, in order to comply with relevant regulations or legislation, safety and maintenance procedures and to assist in the operation of the Vessel in a manner consistent with the Owner's preferences and interests. Owner must approve in writing any contract having a monetary value of over $5,000.

10.     Vessel Insurance

        a.      The Owner warrants that the Vessel shall be held insured at all times on commercially reasonable terms and shall provide the Manager with copies of the insurance certificates and policies on request. Such insurance shall include insurance cover or financial security necessary to satisfy the financial security obligations and liabilities in respect of crew risks (such as, without limitation, death, permanent disability, sickness, injury, repatriation, shipwreck and other unemployment indemnity, abandonment and loss of personal effects) pursuant to the Vessel's flag state laws.

        b.      Subject to the underwriter's agreement, the Owner shall procure that the Vessel's liability insurance shall name the Manager, and subject to underwriter's agreement any third party designated by the Manager, as additional insured. However, unless the Manager gives its express prior consent, no liability to pay premiums or P&I Calls shall be imposed on the Manager.

11.     Management Fee; Expenses

        a.      The Owner shall pay the Management Fee stated in Part I, Section 5 to the Manager, monthly in advance.

        b.      In addition to the monthly Management Fee, the Owner shall pay the following:

                i.      With respect to travel expenses, economy class travel will be used where practical, but for flights or train journeys over three (3) hours, business class will be used.  Car travel will be charged at the prevailing MPH rate for travel within the United States.

                ii.     Costs and expenses necessarily incurred by Manager and/or its staff in providing the Services, such as satellite communication expenses.  Costs or expenses over $5,000 require Owner's prior written approval.

                iii.    Out-of-pocket expenses reasonably and properly incurred by the Manager in pursuance of the Services, payable monthly and within thirty (30) days of presentation of an invoice.

                iv.     Notwithstanding the foregoing, the Owner agrees and understands that no prior written approval shall be required from Owner when the costs or expenses are required for emergency purposes.

        c.      If the actual time required to provide the Services proves to be substantially in excess of that anticipated then the Manager reserves the right to discuss with the Owner an appropriate increase of the Management Fee on terms to be agreed by the parties acting in good faith, provided that the Manager shall not increase the Management Fee with less than 60 days' prior written notice to Owner, and Owner shall thereupon have the right to immediately terminate this Agreement by delivering written notice to Manager, at which time Owner and Manager shall be released from further liability hereunder.

        d.      The Management Fee shall be subject to an annual review on the anniversary of the Commencement Date.

        e.      If the Manager is asked to perform work outside the scope of this Agreement, for example project management, such work will be undertaken at the Manager's prevailing daily rates in force at the time of the request provided the Manager will notify the Owner in advance when such rates will apply, and Manager will obtain Owner's prior written consent.

        f.      The Manager shall, at no extra cost to the Owner, provide its own office accommodation, office staff and office stationery.

12.     Payment of Invoices

        The Manager shall submit invoices to the Owner in respect of all Management Fees, Expenses and other sums when due and the amount of each invoice shall be paid by bank transfer by the Owner within seven (7) days of receipt.

13.     Use of Managers' Funds

        a.      Notwithstanding anything contained herein, the Manager shall in no circumstances be required to use or commit its own funds to finance the provision of the Services or the operation of the Vessel (with the sole exception of Manager's office costs detailed in Clause 11(f)). In the unlikely event that any such payments are nevertheless made in good faith by the Manager, all such payments shall be promptly repaid by the Owner to the Manager and any unpaid sum shall incur interest at the rate of 1.5% per month calculated daily.

        b.      The Owner remains liable for any credit debts incurred, along with any collections or legal fees potentially accrued if this clause is breached.  Breaching this clause will also be grounds for immediate termination of this Agreement.

14.   Responsibilities

a.      Force Majeure:  Neither party shall be liable for loss, damage or delay due to any of the following force majeure events and/or conditions to the extent that the party invoking force majeure is prevented or hindered from performing any or all of their obligations under this Agreement, provided they have made all reasonable efforts to avoid, minimize or prevent the effect of such events and/or conditions: (i) acts of God; (ii) any Government requisition, control, intervention, requirement or interference; (iii) any circumstances arising out of war, threatened act of war or warlike operations, acts of terrorism, sabotage or piracy, or the consequences thereof; (iv) riots, civil commotion, blockades or embargoes; (v) epidemics; (vi) earthquakes, landslides, floods or other extraordinary weather conditions; (vii) strikes, lockouts or other industrial action, unless limited to the employees (which shall not include the Crew) of the party seeking to invoke force majeure; and (viii) any other similar cause beyond the reasonable control of either party.

b.      Liability to Owners:  Without prejudice to Clause 14(a), it is understood and agreed by the Owner that notwithstanding any other Clause in this Agreement: (i) the Manager shall be under no liability whatsoever to the Owner for any loss, damage, delay or expense of whatsoever nature, whether direct or indirect, (including but not limited to loss of profit arising out of or in connection with detention of or delay to the Vessel) and howsoever arising in the course of performance of the Services unless and to the extent that same is proved to have resulted solely from the negligence, gross negligence or wilful default of the Manager or its employees or agents, or sub-contractors employed by them in connection with the Vessel, and in each case the same is covered by the Manager's professional indemnity insurance referred to in Clause 14(c)(ii), in which case (save where loss, damage, delay or expense has resulted from the Manager's personal act or omission committed with the intent to cause same or recklessly and with knowledge that such loss, damage, delay or expense would probably result) the Manager's liability for each incident or series of incidents giving rise to a claim or claims shall never exceed $1 million (one  million dollars) in aggregate; and (ii) the Manager shall not be liable for any acts or omissions of the Vessel's crew, even if such acts or omissions are negligent, grossly negligent, or wilful; except to the extent that the acts or omissions of the Vessel's crew are directly attributable to Manager, in which case the provisions of Section 14(b)(i) will apply.

c.      Indemnity: (i) Except to the extent and solely for the amount therein set out that the Manager would be liable under Clause 14(b), the Owner hereby undertakes to keep the Manager and its employees, agents and sub-contractors indemnified and to hold them harmless against all actions, proceedings, claims, demands or liabilities whatsoever or howsoever arising which may be brought against them or incurred or suffered by them arising out of or in connection with the performance of this Agreement, and against and in respect of all costs, loss, damages and expenses (including legal costs and expenses on a full indemnity basis) which the Managers may suffer or incur (either directly or indirectly) in the course of the performance of this Agreement. (ii)  The Manager undertakes to keep current during the term of this Agreement its professional indemnity insurance, a copy of which is available for inspection by the Owner's on request.  The Owner hereby undertakes to indemnify and hold harmless the Manager from and against any action, proceeding, claim, demand or liability whatsoever which may be brought against the Manager or incurred or suffered by it arising from or out of or in connection with the provision of the Management Services except to the extent that the Manager is held covered in respect of the same under its professional indemnity insurance, or if the action, proceeding, claim, demand or liability concerns the Manager's negligence, wilful misconduct, or breach of this Agreement.

15.   Compliance with Law and Regulations

a.      The Manager will not, in the performance of the Services, do or knowingly cause anything to be done which might cause any breach or infringement of the laws and regulations of the country of registry of the Vessel, and/or of the places where she is operated. In the case that the Owner operates the Vessel as described in Clause 15(b) below, then the Manager reserves the right to terminate this agreement with immediate effect by notice in writing to the Owner in accordance with the provisions of Clause 16.

b.      Notwithstanding anything contained herein, the Owner agrees to indemnify the Manager and hold it harmless in accordance with Clause 14(c)(i) in the case that the Owner operates the Vessel in such a way as to contravene any laws and regulations of any relevant jurisdiction including the country of registry of the Vessel and/or of the places where she is operated; provided that the Manager affirmatively advised the Owner or the Master not to operate the Vessel in such a manner.

c.      The Owner shall be responsible for the payment of all local or national taxes, duties and levies that may be incurred or arise in relation to the ownership or operation of the Vessel.

16.   Duration, Suspension and Termination of the Agreement

a.      This Agreement will be for an initial period of one (1) year from the Commencement Date. This Agreement may be terminated at any time without penalty by either party giving to the other thirty (30) days' advance notice in writing.

b.      Termination of this Agreement shall also be effective immediately on the date of the sale of the Vessel or when the Vessel becomes a total loss or declared as a constructive or compromised or arranged total loss, or is requisitioned, or if either party enters an insolvency process in any jurisdiction or is wound up.

c.      The Manager may suspend performance of the Services and/or terminate the Agreement with immediate effect by notice in writing to the Owner should any sum due or payable by the Owner to the Manager remain outstanding for more than fourteen (14) days.

d.      Without prejudice to Clause 16(c), if the Owner fails to meet any of its obligations under the Agreement, the Manager may give written notice of the default to the Owner requiring it to remedy it as soon as practically possible. In the event that the Owner fails to remedy the default to the reasonable satisfaction of the Manager within thirty (30) days of receipt of notice, the Manager shall be entitled to terminate the Agreement with immediate effect by notice in writing.

e.      If the Manager fails to meet any of its obligations under this Agreement for any reason within the control of the Manager, the Owner shall give written notice to the Manager of the default requiring it to remedy it as soon as practically possible. In the event that the Manager fails to remedy the default to the reasonable satisfaction of the Owner within thirty (30) days of receipt of notice, the Owner shall be entitled to terminate the Agreement with immediate effect by notice in writing.

f.       The Manager shall have no liability whatsoever for any losses of whatever nature incurred or suffered by the Owner in consequence of lawful suspension or termination of this Agreement.

g.       The termination of this Agreement shall be without prejudice to all rights accrued between the parties prior to the date of termination.

17.    <u>Confidentiality of Proprietary Information, Intellectual Property and Employment of Managers' Staff</u>

a.       All proprietary information, intellectual property, software and materials including manuals which may be issued to the Owner from time to time by the Manager in the course of the provision of the Services are to be held confidential by the Owner, no copies are to be made (save with the Manager's written consent), and such materials and information are to be returned to the Manager on termination of this Agreement. The Owner understands that such information and materials are of vital commercial value and importance to the Manager.

b.       The Owner agrees, and shall procure that its affiliates and related companies and persons agree, not to employ (or otherwise engage) or to attempt to employ (or engage as aforesaid), any employees of the Manager until twenty-four (24) months after any such employee has left the employ of the Manager.

18.    <u>Law and Arbitration</u>

This Agreement and any disputes arising out of or in connection with it shall be governed by and construed exclusively in accordance with Florida law, without regards to the principles of conflicts of laws.  The parties shall resolve any dispute relating to or arising from this Agreement by binding, confidential arbitration in Miami, Florida, or such other place as the parties may agree, according to the Rules of Procedure of the Miami Maritime Arbitration Council (the "MMAC") in effect at the commencement of the arbitration. The parties will appoint three (3) arbitrators as follows: each party shall appoint an arbitrator, and the two arbitrators so appointed will jointly appoint a third arbitrator. If one party appoints its arbitrator and the other party fails to appoint an arbitrator within twenty (20) days after receiving notice of the first arbitrator's appointment, the first arbitrator will act as sole arbitrator and his decision will be binding as if issued by a panel of three arbitrators. If the two arbitrators appointed by the parties fail to appoint a third arbitrator within twenty (20) days after the appointment of the second arbitrator, either party may request that the MMAC appoint the third arbitrator. The decision of the arbitrators or any two of them, if a panel of three arbitrators, or the sole arbitrator, as the case may be, will be final and binding on the parties and may be enforced by any court of competent jurisdiction.

19.    <u>Notices</u>

A notice given to a party under or in connection with this Agreement shall be in writing and shall be sent by fax, e-mail, registered or recorded mail or by personal service (with any default or termination notices to be sent by any two (2) of the aforesaid methods) to the details in Part I, Sections 7 and 8 of this Agreement and shall be deemed received (I) if posted, on the seventh (7th) day after posting, (ii) if sent by fax or e-mail, on the day of transmission, and (iii) if delivered personally by hand, on the day of delivery, and in each case proof of such posting, handing in or transmission shall constitute evidence of delivery.

20.    <u>No Warranty</u>

TO THE EXTENT MANAGER, OR MANAGER'S EMPLOYEES, AGENTS, OR CONTRACTORS SHOULD CONDUCT ANY WORK OR REPAIRS UPON THE VESSEL (COLLECTIVELY, "WORK"), OWNER AGREES SUCH WORK (i) SHALL BE INVOICED SEPARATELY, AND (ii) IS CONDUCTED ON AN "AS-IS" BASIS. THE MANAGER GIVES NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKES NO REPRESENTATION AS TO WORK PERFORMED ON THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR ITS MERCHANTABILITY, ALL OF WHICH ARE DISCLAIMED.

21.    <u>Miscellaneous</u>

a.       The terms of this Agreement are private and confidential.  Save where required by law or any other mandatory regulation, the parties hereby agree that they shall not disclose any of the terms hereof to any other person (other than to affiliates or advisors of the parties or as may be required for the performance of the relevant party's obligations hereunder) without the prior written consent of the other party.

b.       Except to the extent provided in Clauses 14(c), no third parties may enforce any term of this Agreement.

c.       Owner shall not assign this Agreement without prior written consent from Manager.

d.       This Agreement may be executed in any number of counterparts. A signed copy received by fax or as an email attachment shall be deemed to be an original.

e.       If any provisions of this Agreement are held illegal or unenforceable by any arbitrator or other competent body, such provision shall be severed and the remainder of this Agreement shall remain operative and binding on the parties.

f.       This Agreement (including all documents attached hereto) shall form the entire agreement between the parties and supersedes all previous agreements and understandings between the parties, and no warranty, condition, description, term or representation is given or to be implied by anything said or written in the negotiations between the parties or their representatives prior to this Agreement. Any modification of this Agreement shall not be of any effect unless in writing signed by or on behalf of the parties.

g.       No waiver of any rights will be effective unless assented to in writing by both parties, and the waiver of any breach or default will not constitute a waiver of any other right hereunder or any subsequent breach or default.

IN WITNESS WHEREOF, the undersigned have executed this Agreement on the day and year first written above.

**MANAGER:**

**Florida Yacht Management, LLC**

By: _____

Print Name: Robert sweet

Title: Manager

**OWNER:**

**Entity Name:** _____

By: _____

Print Name: _____

Title: _____